## WHITE v. GLENNON.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

DISMISSAL AND NONSUIT ⬤═➤19—COUNTERCLAIMS.

Where, in an action to foreclose a purchase-money mortgage, the answer set up three counterclaims—one for damages by being deprived of possession and enjoyment of the premises and of the rents thereof by outstanding leases, one for expenses incurred in actions to foreclose prior mortgages, as to which expenses the mortgagee had agreed to hold defendant harmless, and the other for a sum agreed on as liquidated damages for the vendor's failure to secure cancellation of a lease on the premises—the court should not have granted a discontinuance.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 33–36; Dec. Dig. ⬤═➤19.]

Appeal from Special Term, Otsego County.

Action by Mary F. White, as committee of the person and property of Milton W. Hazelton, an incompetent, against Joseph H. Glennon. From an order of the Special Term discontinuing the action and canceling notice of pendency of action on payment of costs by plaintiff to defendant, defendant appeals. Reversed, and lis pendens restored.

Argued before KELLOGG, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Edson A. Hayward, of Oneonta, for appellant.

Thompson & Van Woert, of Oneonta (J. F. Thompson, of Oneonta, of counsel), for respondent.

LYON, J. This action was brought for the foreclosure of a purchase-money mortgage given by the defendant to Milton W. Hazelton for $6,709.85 covering real property situated in the city of Oneonta, N. Y. The answer set up three counterclaims aggregating about $13,-000. As the first counterclaim, the defendant alleges that said Hazelton in September, 1913, and prior to being adjudged incompetent, conveyed to the defendant the mortgaged property by deed containing covenants of warranty and of quiet enjoyment, "subject to such rights as one Lloyd Spencer may have, if any, under a lease made by said Hazelton to said Spencer bearing date of October 23, 1909, and expiring December 1, 1914," and also subject to three mortgages ag-

⬤═➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gregating $11,300; that thereafter and in December, 1911, said Hazelton leased the said premises, reserving the top floor, to said Spencer for the term of 15 years, for the yearly rental of $1,700; and that by reason of said leasings the defendant has not been permitted to occupy and enjoy said premises or to receive the rents and profits thereof, in accordance with said covenants, to his damage in the sum of at least $10,000.

As the second counterclaim, the defendant alleges that, prior to the time of being adjudged to be incompetent, said Hazelton in writing agreed that if the defendant or the holder of said three prior mortgages should deem it advantageous to foreclose said mortgages for the purpose of securing a perfect title, or to relieve the property from the incumbrances of certain existing leases executed by said Hazelton, said Hazelton would hold the defendant or the holder of said mortgages harmless from the payment of costs, expenses, and disbursements incurred in actions to foreclose said prior mortgages; and that any person to whom he might be so indebted, or the defendant, might have the right to offset such costs, expenses, and disbursements against any sum which might become due upon said purchase-money mortgage sought to be foreclosed herein; that the defendant, deeming the foreclosure of said mortgages to be advantageous, caused them to be assigned and foreclosure proceedings to be instituted in which the defendant incurred expenses to the amount of $1,500, no part of which has been repaid, and which sum he desires to offset against the claim made by the plaintiff in this action. Such foreclosure proceedings resulted in the direction by this court that said mortgages be assigned by the defendant upon receiving the amount thereof with certain costs. Glennon v. Spencer, 163 App. Div. 820, 149 N. Y. Supp. 226.

As the third counterclaim, the defendant alleges that it was agreed between Hazelton and the defendant at the time of the purchase of the property by the defendant that the defendant should make an effort to have the 15-year lease canceled, and that, in the event of his failure to do so, the defendant should be repaid all his expenses incurred in such effort, together with all sums of money paid by the defendant on account of the purchase price, and in addition thereto the sum of $2,000 as liquidated damages; and that the defendant expended on such effort $1,500, no part of which or of the liquidated damages had been repaid him, but constitute a just and proper offset against the plaintiff's demand.

It appears by an affidavit of defendant's attorney verified September 6, 1915, and submitted by the defendant, that both the plaintiff and said Hazelton stated to the affiant that they lived in California, and wanted to go back there, and that said Hazelton has no property except the mortgage being foreclosed and some investment in a California real estate company which probably would not produce anything. While it is claimed by the plaintiff that she and said Hazelton are residents of the city of Oneonta, said Hazelton, in his affidavit of December 9, 1913, states his residence to be Los Angeles, Cal., and his age as 87 years.

We think the order of discontinuance should not have been granted, and further that it is in the interest of both the plaintiff and the defendant that the persons necessary to a complete determination of the matters in controversy be brought in as parties to this action, to the end that a complete determination of all the issues may be had.

Order reversed, and lis pendens restored, with $10 costs and disbursements to the respondent. All concur.

---

### In re WOOD et al.

### In re McKENNA'S WILL.

(Supreme Court, Appellate Division, Second Department.   December 30, 1915.)

1. ATTORNEY AND CLIENT ⬤⇒182—RIGHT TO LIEN—SERVICES IN SURROGATE'S COURT.

   Under Judiciary Law (Consol. Laws, c. 30) § 475, providing that from the commencement of an action or special proceeding the attorney who appears for a party has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, decision, judgment, or final order in his client's favor, and the proceeds thereof, attorneys rendering legal services to a legatee under a will in procuring the probate of the will and her appointment as administratrix with the will annexed had a lien for the value of their services on her individual interest in the estate.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. ⬤⇒182.]

2. EXECUTORS AND ADMINISTRATORS ⬤⇒460—COMPULSORY ACCOUNTING—DENIAL OF PETITION.

   That attorneys petitioning for a compulsory accounting by an administratrix claimed a lien for services rendered the administratrix upon the estate itself, and not on her individual interest therein, was not sufficient reason for denying the petition.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1975–1985; Dec. Dig. ⬤⇒460.]

3. EXECUTORS AND ADMINISTRATORS ⬤⇒460—COMPULSORY ACCOUNTING—PERSONS ENTITLED TO PETITION—"PERSONS INTERESTED."

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1975–1985; Dec. Dig. ⬤⇒460.

   For other definitions, see Words and Phrases, First and Second Series, Interest.]

   Putnam, J., dissenting.

Appeal from Surrogate's Court, Kings County.

Petition by William H. Wood and another to compel compulsory accounting by Laura A. Cregan, as administratrix of Jane A. McKenna,